# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| DAVID J. RENFRO, | Case No.: 2:20-cv-00349-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| COUNTY OF BENEWAH, BENEWAH COUNTY SHERIFF DAVE RESSER, DEPUTY BRYAN DICKENSON SENIOR, DEPUTY BRANDON VANNATTER, DEPUTY DUSTIN O. PULLEY, AND DEPUTY COLTON WYNN, | **(Dkt. 45)** |
| Defendants. | |

Pending is Defendants' Motion for Summary Judgment (Dkt. 45). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Dkt. 22. For the reasons stated below, the Court will deny summary judgment on Plaintiff's unlawful detention claim and on Plaintiff's unlawful seizure of a firearm claim as asserted against the individually named Defendants who allegedly participated in the violations. The Court will dismiss the remainder of Plaintiff's claims.

## BACKGROUND

### A. The Search of Plaintiff's Home

On Saturday July 14, 2018, Benewah County Sheriff's Deputy Colton Wynn responded to a call from parents who found a marijuana pipe in their child's room. Wynn Depo. at 18:14-21 (Dkt. 48-6).[1] Deputy Wynn spoke with the juvenile at the parents' request. *Id.* The juvenile

---

[1] Unless otherwise noted, all the factual citations are to undisputed facts.

**MEMORANDUM DECISION AND ORDER - 1**

told Deputy Wynn that he was obtaining marijuana from Corey Renfro.  *Id.*  Corey Renfro is the adult son of Plaintiff David Renfro.[2]  *Id.* at 19:13-16.

Based on the juvenile's statements, Deputy Wynn went to Corey's home with Deputy Dustin Pulley and spoke with Corey.  *Id.* at 18:24-19:8.  Corey admitted to the Deputies that he had marijuana inside his home.  *Id.*  Corey provided consent to search for the marijuana.  *Id.* at 19:19-25.  The search uncovered marijuana in various forms, including plants.  *Id.* at 20:18-21:2, 45:9-12, 45:19-21.  To reduce his criminal liability, Corey agreed to provide information to Deputy Wynn.  Or. War. Aff. at 8:16-9:02, 11:06-11:10 (Dkt. 51-3).  As part of this cooperation, Corey told Deputy Wynn that his father, David Renfro, was selling marijuana from his own, separate residence.  Def.'s Stmnt of Facts ¶ 1 (Dkt. 58).

Deputy Wynn immediately used Corey's statement to apply for a warrant to search Mr. Renfro's home and vehicles.  *Id.* ¶ 2.  Deputy Wynn submitted the warrant affidavit orally, on July 14, 2018, with the assistance of a local prosecutor.[3]  Or. War. Aff. (Dkt. 51-3).  This affidavit was recorded.  *Id.*  The warrant was approved by Benewah County Magistrate Judge Douglas Payne.  *Id.*

That same day, Deputy Wynn along with other Benewah County Sheriff's deputies – Deputy Pulley, Deputy Brandon Vannatter, and Deputy Rodney Bryan Dickenson II – executed the warrant on Mr. Renfro's home.  7/15/18 Police Rpt. at 2 (Dkt. 45-4, pgs. 2-4).  During the search, the Deputies located a guitar case with a small quantity of marijuana and a pill bottle with

---

[2] To avoid confusion, the Court will refer to Plaintiff as "Plaintiff" or "Mr. Renfro" and to Plaintiff's son as "Corey" or "Corey Renfro."

[3] The specifics of both Corey's statement and the oral search warrant affidavit are outlined in more detail in the discussion section.

**MEMORANDUM DECISION AND ORDER - 2**

BHO (butane hash oil, a cannabis concentrate).[4] *Id.* at 3. Deputies also observed a handgun inside one of Mr. Renfro's vehicles. *Id.* In accordance with the warrant, Deputies seized the drug evidence and left the handgun behind. Def.'s Stmnt of Facts ¶¶ 3-4 (Dkt. 58).

**B. Plaintiff's Arrest and Incarceration**

Mr. Renfro and his wife, Diana Renfro, returned to Mr. Renfro's home during the search of the residence. *Id.* ¶ 5. When he arrived on the scene, Mr. Renfro refused to make a statement. Deputy Wynn subsequently placed Mr. Renfro under arrest for possession of marijuana and drug paraphernalia. *Id.* Both charges were misdemeanor charges. *Id.* ¶ 13.

After his arrest, Mr. Renfro asked Deputy Wynn if he was going to be able to "bail out." Body Cam. # 10 at 5:36-5:45 (Dkt. 49-1 and 50-6). Deputy Wynn responded, "yeah." *Id.* Mr. Renfro then asked how much the bail would be. Deputy Wynn said he did not know because he did not know Mr. Renfro's criminal history. *Id.*

Sometime thereafter, Deputy Wynn transported Mr. Renfro to the Benewah County jail. At the jail, Deputy Wynn ran a NCIC criminal history report on Mr. Renfro. Def.'s Stmnt of Facts ¶¶ 7-8 (Dkt. 58). The NCIC report indicated that Mr. Renfro was arrested on felony charges five times between 1983 and 2002. NCIC Rpt. (Dkt. 45-4, pgs. 7-12). Three of these entries showed the disposition as unknown, one showed the disposition as dismissed, and one showed the disposition as a conviction to a misdemeanor. *Id.* at 7-9. In his police report, Deputy

---

[4] These items were identified based on the Deputies' training and experience. Def.'s Stmnt of Facts ¶ 3 (Dkt. 58). Plaintiff denies that there was marijuana or BHO at his property, but has not presented any evidence to support this assertion. *Compare* Pl.'s Stment of Facts at 2 (disputing the presence of marijuana) *with* Decl. of David Renfro (Dkt. 48-3) (making no mention of the drug evidence found at Plaintiff's home). To the extent this can be considered a factual dispute, it is of no relevance to the resolution of Plaintiff's claims. Plaintiff has not contested the validity of the misdemeanor marijuana charges that led to his arrest, and the nature of the drug evidence is not material to any other claim.

**MEMORANDUM DECISION AND ORDER - 3**

Wynn transcribed four of these five entries.  7/15/18 Police Rpt. at 3-4 (Dkt. 45-4, pgs. 2-4).  For

two of the entries, Deputy Wynn correctly noted that no disposition was available.  *Id.* at 3.  For

one of the entries, Deputy Wynn correctly noted that the felony charge was dismissed.  *Id.* at 4.

For the 1992 entry, however, Deputy Wynn's report mistakenly states: "GRAND THEFT,

FELON, DAVID WAS CONVICTED."  *Id.* at 3.[5]  In truth, this entry shows that while Mr.

Renfro was charged with a felony, he was only convicted of a misdemeanor theft.  NCIC Rpt. 8-

9 (Dkt. 45-4, pgs. 7-12).

    Based on his mistaken reading of the NCIC report, Deputy Wynn added a felony charge

against Mr. Renfro for being a felon in possession of a firearm.  Def.'s Stmnt of Facts ¶ 8 (Dkt.

58).  Mr. Renfro is not, in fact, a felon.  Decl. of David Renfro ¶¶ 5-8 (Dkt. 48-3).

    The addition of the ultimately unsupported felon-in-possession charge deprived Mr.

Renfro of the opportunity to bond out of jail.[6]  *Id.* ¶¶ 5, 9; *see also* Renfro Depo. at 44:15-24,

45:22-46-:24, 47:11-18 (during the initial booking process, Deputy Wynn told Mr. Renfro he

could bail out; sometime thereafter, Mr. Renfro was told he was being charged with felony gun

possession and could not, therefore, post bond); Wynn Depo. at 27:6-9 and 28:6-12 (Dkt. 48-6)

(agreeing that misdemeanor marijuana and drug paraphernalia charges are "generally bondable"

without going before a magistrate judge); Resser Depo. at 31:15-32:2 (Dkt. 60-8) (same).

Indeed, Mr. Renfro's wife, Diana Renfro, submitted a declaration explaining that she attempted

to bond Mr. Renfro out of jail but was "told the felon gun charge had no bond so he could not be

bonded out."  Decl. of Diana Renfro ¶ 8 (Dkt. 48-4).

---

[5] Consistent with this mistake, Deputy Wynn's supervisor, Deputy Bryan Dickenson, Sr.,
testified that Deputy Wynn called and told him that Mr. Renfro's "history showed that he was a
convicted felon out of another state."  Dickenson Depo. at 50:5-15 (Dkt. 48-5).

[6] At the March 25, 2022 hearing, Defendants orally conceded that this was the case.  Their
admission aligns with the undisputed evidence cited above.

**MEMORANDUM DECISION AND ORDER - 4**

Because he was not permitted to post bond, Mr. Renfro was held in jail until his initial appearance on Monday July 16, 2018. Def.'s Stmnt of Facts ¶ 10 (Dkt. 58). At this appearance, the prosecuting attorney dismissed the felon-in-possession charge and Mr. Renfro was released on his own recognizance. *Id.* ¶ 11.

### C. The Seizure and Return of Plaintiff's Firearm

After Mr. Renfro was charged with being a felon in possession, on Saturday July 14, 2018, Deputy Vannatter was asked to return to Mr. Renfro's house to retrieve Mr. Renfro's firearm. *Id.* ¶ 9. In his deposition, Deputy Vannatter indicated that he believed the firearm was included in the original warrant to search Mr. Renfro's home. Vannatter Depo. at 41:19-42:9. This is incorrect. Sr. Warr. At 5 (Dkt. 45-4, pgs. 5-6).

It is undisputed, however, that Deputy Vannatter did not ultimately obtain the firearm from physically searching Plaintiff's home or vehicle. *Id.* at 42:14-43:12; Decl. of Diana Renfro ¶¶ 4-7 (Dkt. 48-4). Instead, Deputy Vannatter obtained the firearm from Mr. Renfro's wife. *Id.* The evidence contains a factual dispute over the circumstances of this exchange. Deputy Vannatter claims he asked Diana Renfro for the firearm. Vannatter Depo. at 45:17-23. In direct contrast, Mrs. Renfro avers that Deputy Vannatter told her she "needed to give him [Mr. Renfro's] gun or [she] would be interfering with an investigation and [she] would go to jail if [she] refused to turn the firearm over to him." Decl. of Diana Renfro ¶ 6 (Dkt. 48-4). In either event, the parties agree that Mrs. Renfro gave Deputy Vannatter the gun. *Id.*

The firearm was returned to Mr. Renfro on Monday July 16, 2018, the day he was released from jail. Renfro Depo. at 38:9-38:10, 76:8-77:10 (Dkt. 48-7).

### <u>SUMMARY JUDGMENT STANDARD</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

**MEMORANDUM DECISION AND ORDER - 5**

R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Id*. at 252.

In deciding whether there is a genuine dispute of material fact, the Court must view the facts in the light most favorable to the nonmoving party.  *Id*. at 255; *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) ("Viewing evidence in the light most favorable to the nonmoving party, we must determine whether there any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.") (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)).  The court is prohibited from weighing the evidence or resolving disputed issues in the moving party's favor.  *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

## <u>QUALIFIED IMMUNITY</u>

Qualified immunity shields law enforcement officials from liability for harm caused by reasonable mistakes, protecting all but the "plainly incompetent or those who knowingly violate the law."  *Easley v. City of Riverside*, 890 F.3d 851, 856 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  The qualified immunity inquiry involves two steps.  When a defendant asserts qualified immunity, the Court must evaluate: (1) whether the defendant violated a constitutional right, and (2) whether the constitutional right was clearly established at the time of the defendant's conduct, i.e., whether the contours of the right were sufficiently well developed that a reasonable official should have known his conduct was unlawful.  *Id.*   Unless the answer to both questions is "yes," the defendant is entitled to immunity.  *Id.*

In conducting this inquiry, the Court adopts the plaintiff's version of the facts. *Tolan*, 572 U.S. at 655-656; *Easley*, 890 F.3d at 856 (evaluating a qualified immunity summary judgment motion by drawing factual inferences in the light most favorable to the plaintiff, the nonmoving party).

The Court maintains the discretion to address either prong of the qualified immunity analysis first. *Easley*, 890 F.3d at 856.

## DISCUSSION

### I.    Plaintiff's § 1983 Claims

#### A.    The Search of Plaintiff's Home

Plaintiff contends that the warrant to search his home was not supported by probable cause because it was based solely on information from an unreliable informant. Pl.'s Rsp. at 6-8 (Dkt. 50-3).[7]  To overcome the individual Defendants' assertion of qualified immunity as to this claim, Plaintiff must show both that (i) the warrant lacked probable cause and (ii) the officers had fair notice of its invalidity. *See Brooks v. Clark Cnty.*, 828 F.3d 910, 920 (9th Cir. 2016) ("The crux of the qualified immunity test is whether officers have 'fair notice' that they are acting unconstitutionally.")  Plaintiff has not and cannot satisfy the second prong of this showing.[8]

In general, a police officer "has qualified immunity for conducting an unconstitutional search if he is acting on the basis of a facially valid warrant." *Barlow v. Ground*, 943 F.2d 1132, 1139 (9th Cir. 1991).  This is because "[w]here [an] alleged Fourth Amendment violation

---

[7] Plaintiff cites a mix of state and federal law to support this claim. *Id.*  In keeping with the spirit of the Complaint and the remainder of the briefing, the Court construes this portion of Plaintiff's response as asserting as a Fourth Amendment unlawful search claim.

[8] Because the Court finds that a reasonable officer would not have known the warrant was unlawful, the Court will not reach the issue of whether probable cause existed for the warrant.

**MEMORANDUM DECISION AND ORDER - 7**

involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).  In order for an officer to be civilly liable for obtaining and executing such a search warrant, therefore, a plaintiff must make one of two showings.

First, qualified immunity will not protect an officer from liability for obtaining a search warrant, where the officer "deliberately or recklessly [makes] false statements or omissions" that are material to the finding of probable cause.  *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009).  Such judicial deceptions are commonly referred as "*Franks*" violations after *Franks v. Delaware*, 438 U.S. 154 (1978).

Second, where no *Franks* violations have occurred, immunity will only be lost "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable."  *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 926 (9th Cir. 2001).  This is a demanding standard.  *Messerschmidt*, 565 U.S. at 547; *see also Malley v. Briggs*, 475 U.S. 335 (1986) (emphasizing a police officer is entitled to qualified immunity for obtaining an allegedly invalid warrant unless "no officer of reasonable competence would have requested the warrant").  Ordinarily, an officer is entitled to rely on the professional expertise and qualifications of a neutral magistrate judge and "cannot be expected to question the magistrate's probable-cause determination."  *Id.*

   i. *Plaintiff has not carried his burden of showing a Franks violation.*

The officer with primary responsibility for obtaining the warrant to search Plaintiff's home was Deputy Wynn.  At the March 25, 2022 motion hearing, Plaintiff argued that Deputy Wynn improperly withheld the following information from the oral search warrant affidavit: (i) that the marijuana found on Corey Renfro was not from a commercial grow, (ii) that Corey

**MEMORANDUM DECISION AND ORDER - 8**

Renfro's information about his father's sale of marijuana was stale, and (iii) that Corey Renfro incorrectly described his father's home.  Plaintiff makes overlapping arguments in the briefing, intended to show that Corey Renfro was not a credible informant.  Pl.'s Rsp at 7 (Dkt. 50-3). The Court agrees with Defendants that none of the alleged omissions or other attacks on Corey Renfro's credibility rise to the level of a *Franks* violation.

To begin, warrant applications necessarily provide information to the reviewing court in summary form.  While police may not deliberately or recklessly omit information from an affidavit that a magistrate judge needs to fairly assess the issue of probable cause, "[t]he police need not provide every detail of an investigation, nor describe every wrong turn or dead end they pursued."  *United States v. McMurtrey*, 704 F.3d 502, 513 (7th Cir. 2013); *see also Ewing*, 588 F.3d at 1226-27 (Fourth Amendment does not require an affiant to include all potentially exculpatory evidence in the affidavit); *Wilson v. Russo*, 212 F.3d 781, 787 (3d. Cir. 2000) ("We cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip."); *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1124 (9th Cir. 1997) (the mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit).  In other words, the omission of minor factual wrinkles from a warrant affidavit is to be expected.  For an omission to have constitutional weight it must be *misleading* and *material*.  *United States v. Norris*, 942 F.3d 902, 910 (9th Cir. 2019); *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (to proceed to trial on a claim of judicial deception, a civil rights plaintiff "must make (1) a 'substantial showing' of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred.").

In this case, the oral search warrant affidavit makes clear that Deputy Wynn did not deceive Magistrate Judge Douglas Payne regarding Corey Renfro's credibility.[9]  First, Deputy Wynn informed Judge Payne that Corey was providing information against Plaintiff in hopes of avoiding his own felony charges.  Or. War. Aff. at 8:16-9:02, 11:06-11:10 (Dkt. 51-3) (explaining that Corey "doesn't want to get in trouble" for the charges Deputy Wynn "has on him").  Deputy Wynn described the promises he had made to Corey and the warnings he had given him about providing accurate information.  *Id.* at 10:25-11:26.  Second, Deputy Wynn admitted to Judge Payne that he had not previously worked with Corey as an informant.  *Id.* at 9:10-9:15.  Third, Deputy Wynn acknowledged that Corey had "lied" to him in the past to "get out of trouble" for other "things that he's done."  *Id.* at 9:30-9:40.  This information provided Judge Payne with the necessary and relevant facts to assess Corey's reliability, including Corey's history of criminal behavior, history of lying to avoid trouble with the law, and the incentives Corey had to provide truthful information in the case against Plaintiff.

Providing Judge Payne with a more detailed description of Corey's marijuana or of Corey's exact statements would not have changed the probable cause calculus.

---

[9] It is undisputed that Deputy Wynn did not identify Corey Renfro to Judge Payne by name or by his relationship to Plaintiff, but instead referred to Corey as an "informant."  Or. War. Aff. (Dkt. 51-3).  Plaintiff, however, never argues that this omission was false, misleading, or improper.  The Court will not raise this potential, and likely unsuccessful, argument on Plaintiff's behalf.  When probing Corey's credibility, Judge Payne specifically noted that he was not asking Deputy Wynn to identify the informant.  *Id.* at 9:10-9:29.  In addition, Corey's relationship to Plaintiff, while notable, is not exculpatory on its face.  A father-son relationship is just as likely to bolster as to undermine the credibility of an informant.  *See Morelite Constr. Corp. v. New York City Dist. Council Carpenters Ben. Funds,* 748 F.2d 79, 84 (2d. Cir. 1984) (without knowing more about a particular father-son relationship, "we are bound by our strong feeling that sons are more often than not loyal to their fathers, partial to their fathers, and biased on behalf of their fathers.").

**MEMORANDUM DECISION AND ORDER - 10**

For example, Plaintiff accords great significance to Deputy Wynn's belief that the marijuana Corey possessed was not from a legal grow.  Plaintiff's insistence that this fact is exculpatory relies on the unfounded assumption (i) that Corey was obtaining all his marijuana from his father and (ii) that his father was only selling marijuana stolen from Washington, so that Corey having non-commercial marijuana undermined Corey's claims about his father.  But this is mere speculation, that does not match the available record.  According to the body camera footage and oral warrant affidavit, Corey told Deputy Wynn that Plaintiff would steal BHO and "other stuff" from the Washington farm where Plaintiff worked and then Plaintiff would trade the BHO for other items, including marijuana in its green leafy form.  *Id.* at 14:16-14:45; *see also* Body Cam. # 6 at 5:40-5:50 (Dkt. 49-1 and 50-6).  In these circumstances, there was nothing misleading about Deputy Wynn declining to inform Judge Payne of the exact types, amounts, and kinds of marijuana found in Corey's possession.

Plaintiff's argument about the alleged staleness of the warrant faces similar pitfalls. Plaintiff maintains that Corey "changed his statement" about when he last saw marijuana at his father's house at the instruction of Deputy Wynn.  Pl.'s Rsp. at 7 (Dkt. 50-3).  The body camera footage does not support this conclusion.  This footage captures portions of Deputy Wynn's conversations with Corey, including an interview at the police station after Corey's arrest.  Body Cam. # 6 (Dkt. 49-1 and 50-6).  During this interview, Deputy Wynn asked Corey when he last saw his father with a "large" amount of marijuana.  *Id.* at 2:03-2:24.  Corey answered, "last time I actually seen with my own eyes, was maybe two to three weeks ago."  *Id.* at 2:24-2:30.  Deputy Wynn then asked Corey to clarify how this squared with Corey's prior, presumably off-camera, statement that he saw his father with marijuana "yesterday."  *Id.* at 2:30-2:44.  Corey explained that he only saw a "little" amount of marijuana yesterday, when his father sold him 10 grams. *Id.* at 2:44-3:28.  Corey indicated that this was consistent with his father's practice of bringing

**MEMORANDUM DECISION AND ORDER - 11**

limited amounts of marijuana out for sale at a time.  *Id.* at 2:44-3:28, 6:10-6:21.  This exchange

does not constitute substantial proof that Corey was lying or changing his story to please the

police.  In every police interview, there will be moments of nuance, clarification, and ambiguity.

The Fourth Amendment does not require an officer to recount every single one of these

unremarkable exchanges in a search warrant affidavit.  *See United States v. Smith*, 9 F.3d 1007,

1014 (2d. Cir. 1993) ("minor errors or inconsistencies" in an informant's description of the

defendant did not "undermine the existence of probable cause").

The same reasoning applies to Corey's description of his father's house.  When asked

where his father lived, Corey admitted that he did not know the exact address.  *Id.* at 4:10-4:16.

Corey was able, however, to correctly (i) name the street where his father lived, (ii) state that the

house had a wood porch, (iii) provide the exact location of the house – the second house on the

right side of the street, (iii) identify the house next to his father's house as a camper, and (iv) and

describe the vehicles normally parked at his father's place.  *Id.* at 4:16-5:09.  After obtaining this

description, Deputy Wynn asked Corey to confirm the location of his father's house on Google

maps.  *Id.* at 7:40-7:46.  Corey quickly identified the house.  *Id.* at 9:27-9:45.  During this portion

of the interview, Deputy Wynn asked if it was "a little log cabin kind-of house," and Corey

responded, "sort of, I think" in an unsure voice, before once again positively and confidently

identifying the house on Google maps based on its location and the vehicles parked at the house.

*Id.* at 9:45-10:05.  This exchange sheds little to no light on Corey's credibility.  Deputy Wynn's

decision to not include it in the warrant affidavit was a normal exercise of concision.  It did not

skew the magistrate judge's impression of the case or impact the probable cause findings.

Taken together, the alleged omissions Plaintiff has identified are neither misleading nor

do they obviate the probable cause finding.  Plaintiff's judicial deception claim, consequently,

fails as a matter of law.

**MEMORANDUM DECISION AND ORDER - 12**

ii.     *The Deputies who obtained and executed the warrant to search Plaintiff's home reasonably relied on Judge Payne's approval.*

Where, as here, there is no showing of judicial deception, a search warrant generally acts as a "shield of immunity" for officers conducting a search within the bounds of the warrant. *Messerschmidt*, 565 U.S. at 547.  It is not clear from the briefing whether Plaintiff is asserting an exception to this qualified immunity under the *Malley* and *Messerschmidt* line of cases.  If so, this argument is unpersuasive.

While Plaintiff is correct that Corey's reliability as an informant was open to question, Corey's credibility was not so obviously bankrupt that "no reasonably competent officer would have concluded that a warrant should issue."  *See id.*

To determine whether an informant's tip is sufficient to support a finding of probable cause, the court uses a totality-of-the-circumstances approach.  *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006).  Under this approach, the court judges the reliability of an informant based on several factors, including whether the informant is known or anonymous, whether the informant has a proven track record of reliability, the informant's basis of knowledge, and whether the informant provides detailed predictive information about future events that is corroborated by police observation.  *Id.*

In this case it is undisputed (i) that Corey lacked a track record of reliability and (ii) that officers took no steps to corroborate any predictive or non-public aspects of Corey's information. Despite these deficiencies, several indicia of reliability supported Deputy Wynn's reliance on Judge Payne's approval of the warrant.  First, Corey was not an anonymous informant.  Or. War. Aff. at 9:10-9:29 (Dkt. 51-3).  This bolstered his credibility.  *See Rowland*, 464 F.3d at 907 ("a known informant's tip is thought to be more reliable than an anonymous informant's tip.").  Second, Corey provided Deputy Wynn with a detailed and plausible explanation for how he

**MEMORANDUM DECISION AND ORDER - 13**

knew about his father's alleged marijuana dealing.  Specifically, Corey described a long history

of purchasing marijuana from his father.  Or. War. Aff. at 5:30-6:03 (Dkt. 51-3).  Consistent with

this history, Corey described what kind of marijuana products his father allegedly possessed,

how he obtained these products, and where in the house Plaintiff allegedly stored these items.

*Id.* at 6:03-7:17, 7:34-7:44, 14:16-14:45; *see also* Body Cam. # 6 at 6:23-6:41 (Dkt. 49-1 and 50-

6) (Corey told Deputy Wynn that Plaintiff normally keeps his marijuana in his bedroom, in a

guitar case, and that Plaintiff keeps BHO in the freezer or his room).  These details constituted

evidence of reliability.  *See United States v. Elliott*, 893 F.2d 220, 223 (9th Cir. 1990) (holding

that "[a] detailed eye-witness report of a crime [may be] self-corroborating" and explaining that

the "range of details" an informant provides is an "important indicia of reliability").  Third,

Corey had an incentive to tell the truth – to avoid his own felony charges – and was facing

additional liability should he lie.  Or. War. Aff. at 8:16-9:02, 10:25-11:26 (Dkt. 51-3) (Deputy

Wynn warned Corey that if he provided false information about his father, he may face more

charges for wasting police time and lying).  The Ninth Circuit has held that this kind of

accountability will increase the reliability of an informant.  *Rowland*, 464 F.3d at 908 (where an

informant faces exposure to legal sanction, or may otherwise be held accountable for false

assertions, this bolsters the credibility of a tip).  Finally, Corey's information was not completely

uncorroborated.  When Judge Payne asked Deputy Wynn about whether there was any

confirmation of Corey's claims, Deputy Wynn averred that Corey was not the first person to tell

him Plaintiff was selling marijuana.  Or. War. Aff. at 11:25-12:14 (Dkt. 51-3).  Deputy Wynn

acknowledged that these other, unnamed informants had never provided fresh information.  *Id.*

Deputy Wynn indicated, however, that he was not "surprised" by Corey's revelations given his

background knowledge.  *Id.*

**MEMORANDUM DECISION AND ORDER - 14**

In many of the above regards, this case is comparable to the facts of *Elliott*.  In *Elliott*, the defendant's ex-girlfriend contacted the police and told them defendant was growing marijuana in his apartment and also had cocaine.  *Elliott*, 893 F.2d at 222.  At the request of the police, she testified in front of a magistrate judge about this information, and the judge issued a warrant to search the defendant's apartment.  *Id.*  The Ninth Circuit excised the only corroborating information from the warrant.  *Id.* at 222-223.  The Court held, however, that the ex-girlfriend's testimony, standing alone, was sufficient to support probable cause because the testimony was given under penalty of perjury, was detailed, and was not anonymous.  *Id.* at 223-224.

The Court cannot conclude that Corey's reliability is so much more deficient than the informant in *Elliott* that Deputy Wynn should have ignored the prosecutor's endorsement and Judge Payne's approval and concluded the warrant was invalid.  *See Armstrong v. Asselin*, 734 F.3d 984, 991 (9th Cir. 2013) ("[p]resentation to a . . . prosecutor, and approval by a judicial officer before [a] warrant is issued," generally demonstrates that officers may reasonably rely on the validity of the warrant).  In other words, the warrant affidavit contained a "colorable" argument that Corey was credible, thereby shielding Deputy Wynn and the other Benewah County officials from liability.  *See United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013) ("An affidavit is so lacking in indicia of probable cause, or bare bones, when it fails to provide a colorable argument for probable cause.").  The Court will, therefore, dismiss Plaintiff's Fourth Amendment unlawful search claim against all the individual Defendants, including the supervisory Defendants.[10]

---

[10] *See Grice v. McVeigh*, 873 F.3d 162, 169 (2d. Cir. 2017) ("Defendants are entitled to qualified immunity on a supervisory liability claim unless the actions of the supervisor and the subordinate both violate clearly established law."); *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998) (same).  The only remaining Defendant against whom Plaintiff's Fourth Amendment claim is alleged is Defendant County of Benewah.  *See Kentucky. v. Graham*, 473 U.S. 159, 165 (1985) (official-capacity suits against municipal officials are identical to a suit against the municipal

B. <u>Plaintiff's Misdemeanor Arrest</u>

Plaintiff's next contention is that Defendants violated his federal, constitutional rights when Deputy Wynn arrested him for a misdemeanor offense without a warrant. To support this contention, Plaintiff cites to law from Idaho and other states. Plaintiff's arguments are unavailing. It is well-settled that § 1983 does not provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law. *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990).

Under the Fourth Amendment, a probable cause standard applies to all arrests; an arrest may occur if an officer has probable cause to believe an individual committed even a "very minor" criminal offense. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "[W]hile States are free to regulate . . . arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553 U.S. 164, 176 (2008). Consistent with this rule, both the Supreme Court and the Ninth Circuit have held that violations of state restrictions on misdemeanor arrests do not give rise to federal constitutional claims. *Id.*; *see also Barry*, 902 F.2d at 773 (no Fourth Amendment violation in § 1983 case when plaintiff arrested in violation of a state law); *Edgerly v. City & County of San Francisco*, 599 F.3d 946, 956 (9th Cir. 2010) (finding that a plaintiff's arrest for an infraction was constitutional, even though it was impermissible under state law). These cases foreclose Plaintiff's federal unlawful arrest claim.

---

entity itself). The Court, however, is separately dismissing Plaintiff's municipal liability claims. *See infra* Section I.F.ii. The combined effect of these rulings is the dismissal of Plaintiff's entire Fourth Amendment unlawful search claim.

**MEMORANDUM DECISION AND ORDER - 16**

C.  Plaintiff's Continued Detention on the Felon-in-Possession Charge

The heart of Plaintiff's case is that Defendants unlawfully charged and detained Plaintiff for being a felon in possession of a firearm when Plaintiff was not, in fact, a felon.  Pl.'s Rsp. at 8-9 (Dkt. 50-3); *see also* Compl. ¶¶ 3.6-3.11, 4.18-4.22 (Dkt. 5).[11]

The basic facts underlying this claim are undisputed.  After Plaintiff's arrest on misdemeanor drug charges, Deputy Wynn added a felon-in-possession charge against Plaintiff.  Def.'s Stmnt of Facts ¶¶ 5, 8, 13 (Dkt. 58).  Plaintiff is not, in fact, a felon.  Decl. of David Renfro ¶ 5 (Dkt. 48-3).  It is undisputed that the addition of the mistaken felon-in-possession charge eliminated Plaintiff's opportunity to post bond.  Had Deputy Wynn not added a felon-in-possession charge, Plaintiff would have been afforded the opportunity to bond of out jail on the misdemeanor drug charges after his arrest.  Wynn Depo. at 28:6-12 (Dkt. 48-6).  Because the charge was added, however, Plaintiff was held *without bond* from his arrest on Saturday July 14, 2018 until he could be brought to court on Monday July 16, 2018.  Decl. of David Renfro ¶¶ 6, 9 (Dkt. 48-3).  Defendants have made four arguments as to why they should not be held liable for this error.  None of these arguments are persuasive.

    *i.*    *Deputy Wynn's mistake of fact was not reasonable.*

At the March 25, 2022 motion hearing, Defense counsel acknowledged that Deputy mistook the 1992 misdemeanor theft conviction listed in Plaintiff's NCIC report for a felony conviction.  For the first time at the motion hearing, Defendants argued that this factual mistake was objectively reasonable.

---

[11] Plaintiff characterizes this as an unlawful arrest claim.  As Defendants point out, however, Plaintiff was never arrested on the felony charge.  Wynn Depo. at 35:25-36:13 (Dkt. 48-6).  Consistent with this fact, the Court construes Plaintiff's attack on the constitutionality of his incarceration on the felon-in-possession charge as a Fourth and Fourteenth Amendment unlawful detention claim.

**MEMORANDUM DECISION AND ORDER - 17**

Qualified immunity protects officers from reasonable mistakes, whether the mistake be a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Longoria v. Pinal Cnty.*, 873 F.3d 699, 704 (9th Cir. 2017); *see also Heien v. North Carolina*, 574 U.S. 54, 57 (2014) (reasonable mistakes of fact and law do not defeat probable cause).  This is an objective standard.  *See Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011) ("an officer's belief in a mistaken fact must be held reasonably and in good faith").

In this case, Deputy Wynn may have made an honest mistake, but it was not objectively reasonable.  The NCIC report, which Deputy Wynn personally reviewed and summarized, clearly and unmistakably classifies Plaintiff's 1992 theft charge as a "misdemeanor" conviction. NCIC Rpt. at 9 (Dkt. 45-4, pgs. 7-12).  Where a mistake is this obvious, the qualified immunity standard does not allow a "chimera created by an officer's imaginings" to impinge on a plaintiff's liberty.  *See Liberal*, 632 F.3d at 1078 (holding that it is not a reasonable mistake for an officer to believe that "windows that are rolled down and that cannot be viewed at all are in fact rolled up and tinted"); *see also Groh v. Ramirez*, 540 U.S. 551, 564 (2004) (where an agent, through "lack of due care," mistakenly prepared a warrant without listing the items to be seized, the agent could not argue that he "reasonably" relied on the magistrate judge's "assurance that the warrant contained an adequate description of the things to be seized").  Deputy Wynn's mistaken, subjective beliefs are not a defense to liability in this case.

     ii.     *The NCIC report did not furnish probable cause that Plaintiff was a felon.*

In the briefing, Defendants set aside Deputy Wynn's idiosyncratic mistake and argue that the correctly construed NCIC report – which shows that Plaintiff had been arrested or cited for with several felony offenses between 1983 and 2002 – provided objective probable cause that Plaintiff was a felon.

**MEMORANDUM DECISION AND ORDER - 18**

Probable cause exists when "the totality of circumstances known to the arresting officers" would cause "a prudent person" to conclude "that there was a fair probability that the [suspect] had committed a crime." *United States v. Price*, 980 F.3d 1211, 1225 (9th Cir. 2020).  As the Supreme Court has oft reminded, probable cause is a "nontechnical" concept that deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003).  The probable cause, analysis, however, does not turn a blind eye the specialized knowledge of law enforcement officers. *Id.* at 371.

To determine whether an officer had probable cause to file charges against a suspect, courts generally view the historic facts from the perspective of "an objectively reasonable police officer." *Id.*; *see also O'Doan v. Sanford, 991 F.3d 1027*, 1043 (9th Cir. 2021) ("Probable cause and qualified immunity are assessed from the standpoint of an objectively reasonable police officer . . ."). This perspective takes "police experience and expertise" into account. *Ornelas v. United States*, 517 U.S. 690, 699 (1996).  For example, in deciding whether probable cause exists, a police officer may "draw inferences based on his own experience," even though these inferences would not be obvious to a lay person. *Id.*; *see also United States v. Valdes-Vega*, 738 F.3d 1074, 1079 (9th Cir. 2013) ("the facts must be filtered through the lens of the agents' training and experience"); *United States v. Martin*, 509 F.2d 1211, 1213 (9th Cir. 1975) (probable cause requires consideration of "*all* the facts known to the officers and . . . *all* the reasonable inferences that could be drawn by them before the arrest.").

This perspective is not one-sided, functioning only to justify arrests and detentions and never to exonerate or eliminate potential suspects.  The Ninth Circuit has long recognized that law enforcement officers may not disregard information that tends to dissipate probable cause. *See United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007).

**MEMORANDUM DECISION AND ORDER - 19**

Here, the inference that Defendants are asking this Court to endorse – that an arrest for a felony charge indicates a "fair probability" of a conviction on that charge – is not reasonable under these standards.

Numerous Ninth Circuit opinions have recognized that probable cause for an arrest "can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015); *see also Barapind v. Enomoto*, 400 F.3d 744.752 (9th Cir. 2005) (per curiam) (en banc) (facts that may not comprise proof beyond a reasonable doubt can provide competent evidence supporting a finding of probable cause); *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988) (same). This is because the proof beyond a reasonable doubt standard places a much greater burden on the government to establish guilt than that required for an arrest. *See United States v. Velazquez*, 1 F.4th 1132, 1137 (9th Cir. 2021) (describing the "beyond a reasonable doubt" standard as a "high" burden and explaining that for a jury to convict under this standard, "the jury must reach a subjective state of near certitude of the guilt of the accused.") (internal citations omitted). For this reason, as well as others,[12] not all lawful felony arrests result in felony convictions.

---

[12] As the Supreme Court has emphasized, the criminal justice system is predominately "a system of pleas, not a system of trials." *Missouri v. Frye*, 566 U.S. 134, 143 (2012). "To a large extent horse trading between prosecutor and defense counsel determines who goes to jail and for how long." *Id.* at 144. As part of this process, even where charges are supported, it is not uncommon for prosecutors to drop or lower charges in exchange for a guilty plea. *See id.* at 144-145 (recognizing that those who accept a plea generally receive more favorable sentences, including, at times, "a conviction on lesser charges"); *see also Cuero v. Cate*, 850 F.3d 1019, 1037 n.1 (9th Cir. 2017) (explaining that a "charge bargain" consists of "an arrangement whereby the defendant and prosecutor agree that the defendant should be permitted to plead guilty to a charge less serious than is supported by the evidence").

**MEMORANDUM DECISION AND ORDER - 20**

Indeed, the facts of this very case – as known to Deputy Wynn when he added the felon-in-possession charge – show that one cannot safely assume that a felony arrest will result in a felony conviction.  Here, Plaintiff's NCIC report showed arrests for five felonies between 1983 and 2022.  NCIC Rpt. at 7-9 (Dkt. 45-4, pgs. 7-12).  Of these arrests, two were confirmed <u>not</u> to have resulted in felony convictions.  The remaining three entries had no known disposition.  Speculation that one or more of these three arrests resulted in a felony conviction simply does not amount to probable cause that Plaintiff was a felon.  *See Lopez*, 482 F.3d at 1072 ("mere suspicion, common rumor, or even strong reason to suspect are not enough" to establish probable cause); *see also Brothers v. Dowdle*, 817 F.2d 1388, 1390 (9th Cir. 1987) ("The fact of arrest or detention by the police does not establish that the suspect has committed a crime.").

> iii.    *An objectively reasonable officer would have known the NCIC report did not justify adding a felon-in-possession charge.*

Defendants' reply asserts that "even if probable cause was lacking, the individually named Defendants are entitled to qualified immunity because it was objectively reasonable for them to believe there was probable cause to" charge Plaintiff with being a felon-in-possession.  Def.'s Rply at 4 (Dkt. 51).  Although Defendants never develop this argument at length, the Court considers it Defendants' strongest defense.

Under the second prong of the qualified immunity analysis, an officer sued for unlawful detention is shielded from liability if "it is reasonably arguable that there was probable cause" for the detention.  *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011).  This is sometimes called "arguable probable cause."  *See Reed v. Lieurance*, 863 F.3d 1196, 1213 n.4 (9th Cir. 2017).  As Defendants stress in the reply, determining whether arguable probable cause exists depends on the state of precedent at the time of an allegedly unlawful detention.  In general, it is not clearly established that an officer has detained someone without probable cause

**MEMORANDUM DECISION AND ORDER - 21**

unless (i) factually analogous, binding Supreme Court or Circuit precedent resolves whether the circumstances with which the particular officer was confronted constituted probable cause or (ii) the violation is so "obvious" that the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

Here, Plaintiff has not identified, nor has the Court located, factually analogous precedent announcing whether three felony arrests constitute probable cause of a felony conviction. Having carefully considered the matter, and given due deference to the protections afforded to law enforcement officers for reasonable mistakes, the Court is convinced that it was "obviously" unlawful to lodge a felon-in-possession charge against Plaintiff based solely on an NCIC report showing no felony convictions.

First, the numerous, published Ninth Circuit cases cited above provide fair notice that a felony arrest is "far removed" from a felony conviction. *Borunda*, 885 F.2d at 1389; *see also Yousefian*, 779 F.3d at 1014 (probable cause for an arrest "often" exists even though a conviction cannot later be secured); *Dowdle*, 817 F.2d at 1390 (for sentencing purposes, a prior arrest alone does not "establish" that the defendant has committed a particular crime).

Second, it is a fundamental tenet of the American criminal justice system that an individual charged with a crime is presumed innocent until proven guilty. *Ford v. Peery*, 999 F.3d 1214, 1224-1225 (9th Cir. 2021). The Supreme Court has called this presumption "axiomatic and elementary," "vital and fundamental," and foundational to "the administration of our criminal law." *Id.* (citing *Coffin v. United States*, 156 U.S. 432, 453 (1895), *Estelle v. Williams*, 425 U.S. 501, 503 (1976), and *Reed v. Ross*, 468 U.S. 1, 4-5 (1984)). Criminal defendants or arrestees, such as Plaintiff, only lose the presumption of innocence once they have been convicted by a jury beyond a reasonable doubt. *Id.* To treat a felony arrest as evidence of a

**MEMORANDUM DECISION AND ORDER - 22**

felony conviction turns this principle on its head.  *See United States v. Scott*, 450 F.3d 863, 874

(9th Cir. 2006) ("Defendant is, after all, constitutionally presumed to be innocent pending trial,

and innocence can only raise an inference of innocence, not of guilt.").  Specifically, it would

permit officers to impose very serious, real-world penalties on those with felony arrest records –

e.g., reflexively detaining them for otherwise lawful conduct, such as owning a firearm – based

solely on a reverse presumption that an arrest for a felony probably resulted in a felony

conviction.  Qualified immunity does not permit officers to flout basic constitutional protections

in this manner. [13]

   iv.    *The undisputed facts show that Plaintiff's detention was prolonged due to the*
          *addition of the felon-in-possession charge.*

Defendants' final contention is that the existence of probable cause to arrest and detain

Plaintiff on the misdemeanor drug charges is "an absolute defense" to holding Plaintiff on an

unsupported felon-in-possession charge.  Def.'s MSJ at 7-10 (Dkt. 21); Def.'s Rply at 5 (Dkt.

51).  The problem with this argument is that it is counterfactual.

Defendants are correct that detaining Plaintiff for forty-eight hours over the weekend on

the misdemeanor marijuana charges pending his presentment to a magistrate judge would not

have violated Plaintiff's federal constitutional rights.  *County of Riverside v. McLaughlin*, 500

U.S. 44, 56 (1991).  But that is not what happened here.

---

[13] In reaching this conclusion, the Court does not suggest that the constitution requires police to universally ignore a suspect's arrest record.  An arrest record can reflect wrongful *conduct* indicative of dangerousness, deceit, or disrespect for the law.  Police may, therefore, consider such records when making decisions about officer safety.  *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (evidence regarding a suspect's criminal history may be relevant and admissible in an excessive force case, provided that the officers were aware of such information at the time of incident).  What the law has never permitted, however, is for law enforcement officers to infer a *conviction* and inflict attendant criminal consequences on an individual, such as labeling that person a felon, based *solely* on an arrest or detention.  *See Dowdle*, 817 F.2d at 1390; *Scott*, 450 F.3d at 874.

**MEMORANDUM DECISION AND ORDER - 23**

The undisputed facts establish that detention officials at the jail intended to permit Plaintiff to bond out on the misdemeanor marijuana charges, but revoked this opportunity after Deputy Wynn added a felon-in-possession charge against Plaintiff. *See supra* Background Section B, pg. 4. In other words, it is undisputed that Plaintiff was detained without bond solely because of the unlawful felony gun charge. It is also undisputed that the deprivation of bond prolonged Plaintiff's detention.[14] *Id.*

Defendants' insistence that they should be immunized from federal liability for any harm caused by this error because they could have achieved the same result – detaining Plaintiff over the weekend – by ignoring the normal state bond schedule, in violation of standard practice and likely in violation of Plaintiff's state rights, is a hard argument to swallow.

More importantly, Ninth Circuit case law does not countenance this outcome. In *Ewing*, the Ninth Circuit considered whether prolonging detention through the addition of more serious charges violated the plaintiffs' constitutional rights. *Ewing*, 588 F.3d at 1230. The plaintiffs in *Ewing* were arrested on drug and weapon charges. *Id.* After the arrest, the police added a murder charge. *Id.* Like here, the effect of adding the murder charge was that the plaintiffs were "denied bail, prolonging their detention." *Id.* In a footnote, the Ninth Circuit acknowledged that probable cause on one charge will generally preclude a false arrest claim on other charges. The Court noted, however, that this rule did not govern the outcome in *Ewing* because "the arrest for murder . . . caused [the plaintiffs'] continued detention." *Id.* at 1230 n.19. The Court proceeded,

---

[14] At the motion hearing, Defendants challenged, for the first time, whether Plaintiff had produced sufficient evidence that he could have afforded bond and would have made use of the opportunity to post bond. This argument is not supported by the record. Plaintiff's wife has submitted an uncontested declaration indicating that she came to the jail to bond Plaintiff out on the marijuana charges, but was prevented from doing so because of the felon-in-possession charge. Decl. of Diana Renfro ¶ 8 (Dkt. 48-4). Defendants have not cited any evidence to support a contrary finding.

**MEMORANDUM DECISION AND ORDER - 24**

therefore, to analyze if there was probable cause or arguable probable cause for the addition of the murder charges.[15]  *Ewing* forecloses Defendants' argument that the lawful marijuana charges immunize them from prolonging Plaintiff's detention on the unlawful felon-in-possession charge.  It also refutes Defendants' claim that no case put them on notice that such a detention would violate the federal constitution.

By prolonging Plaintiff's detention for several days through the addition of an unsupported felon-in-possession charge, Defendants violated Plaintiff's clearly established constitutional rights.  Defendants' motion fails as to Plaintiff's unlawful detention claim.

> D.  The Seizure of Plaintiff's Firearm

After Plaintiff was charged with being a felon in possession of a firearm, Deputy Vannatter returned to Plaintiff's home and retrieved Plaintiff's handgun from Plaintiff's wife. Defendants justify this warrantless seizure on two grounds.

First, Defendants contend that because officers saw Plaintiff's firearm in plain view during the lawful execution of the warrant to search Plaintiff's home and property, it would not be "reasonable to require officers to obtain a separate warrant" to return and seize the firearm. Def.'s MSJ at 11 (Dkt. 45-1).  This is a specious argument.  The warrant that authorized the search of Plaintiff's home only authorized the seizure of drug evidence; it did not authorize the seizure of firearms or firearm evidence.  Sr. Warr. At 5 (Dkt. 45-4, pgs. 5-6).  By returning to Plaintiff's home, Deputy Vannatter was not resuming a search approved by the magistrate judge; he was conducting a new search.  *See Gabbert v. Conn*, 131 F.3d 793, 805 (9th Cir. 1997) (courts will allow a second search under the same warrant only where, among other things, officers

---

[15] This ruling accords with the Supreme Court's long-standing recognition that "a lawful seizure can become unlawful if it is prolonged beyond the time reasonably required to complete [the original] mission."  *Muehler v. Mena*, 544 U.S. 93, 101 (2005).

**MEMORANDUM DECISION AND ORDER - 25**

return to "retrieve items listed in the search warrant") *rev'd on other grounds*, 526 U.S. 286

(1999); *United States v. Kaplan*, 895 F.2d 618, 623 (9th Cir. 1990) (same).

      The fact that Deputy Vannatter knew a gun was on the property did not excuse him from

obtaining a second warrant for its search and seizure.  For the plain view doctrine to apply, an

officer must have "lawful right of access" to the incriminating item at the time he seizes it.  *See*

*G & G Jewelry, Inc. v. Oakland*, 989 F.2d 1093, 1101 (9th Cir. 1993) ("even though contraband

plainly can be seen and identified from outside the premises, a warrantless entry into those

premises to seize the contraband would not be justified absent exigent circumstances.").  In other

words, just because an officer knows contraband can be found at a suspect's house and has seen

it lawfully does not mean the officer can enter the home to search for and seize the contraband

without a warrant.  *Frunz v. City of Tacoma*, 468 F.3d 1141, 1143 (9th Cir. 2006) ("the

Constitution requires a magistrate to pass on the desires of the police before they violate the

privacy of the home"); *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009) ("A

warrantless search is unconstitutional unless the government demonstrates that it falls within

certain established and well-defined exceptions to the warrant clause.") (internal citation

omitted).[16]

      Second, Defendants claim that the seizure of the firearm was consensual.  This argument

stands on better ground.  Consent is a valid justification for a warrantless seizure.  *Brown*, 563

F.3d at 415.  To be valid, however, consent must be voluntary and freely given.  *United States v.*

---

[16] Officers originally observed Plaintiff's firearm in a vehicle parked on Plaintiff's property.
Def.'s Stmnt of Facts ¶ 4 (Dkt. 58).  The record does not indicate whether (i) Plaintiff's gun was
in his home or vehicle at the time Deputy Vannatter returned to the property and (ii) if the gun
was in Plaintiff's vehicle, whether this vehicle was parked within the curtilage of the property.
In the absence of this information, the Court will not speculate about the applicability of the
automobile exception as a possible defense to Deputy Vannatter's conduct.  *See United States v.
Job*, 871 F.3d 852, 860 (9th Cir. 2017) ("The government bears the burden of proving that a
warrantless search or seizure falls within an exception to the warrant requirement.").

**MEMORANDUM DECISION AND ORDER - 26**

*Russell*, 664 F.3d 1279, 1281 (9th Cir. 2012).  Courts determine whether consent was voluntary by considering the totality of the circumstances.  *Brown*, 563 F.3d at 415.  Relevant factors include: (1) whether the consenting individual was in custody; (2) whether the officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the consenting individual was notified that she had a right not to consent; and (5) whether the consenting individual had been told a search warrant could be obtained.  *Id.*  Critically, no one factor is determinative.  The "factors serve merely as guideposts, not as a mechanized formula to resolve the voluntariness inquiry."  *Id.* (internal citation omitted).

Here, there is a genuine dispute of material fact regarding whether Plaintiff's wife consented to the seizure of Plaintiff's firearm.  Plaintiff's wife has submitted an affidavit saying she gave Deputy Vannatter the gun because he told her she would be interfering with an investigation and would "go to jail" if she refused to turn the firearm over to police.  Decl. of Diana Renfro ¶¶ 6-7 (Dkt. 48-4).  If a jury credits this testimony, the seizure of Plaintiff's firearm would not be consensual.  *See United States v. Winsor*, 846 F.2d 1569, 1584 n.3 (9th Cir. 1988) ("compliance with a police demand is not consent"); *United States v. Ocheltree*, 622 F.2d 992, 994 (9th Cir. 1980) (consent to a search is not voluntary when made under a threat of unlawful arrest).  Accordingly, Defendants' motion is denied as to Plaintiff's unlawful seizure of firearm claim.

    E.  Plaintiff's Undefended First, Fourth, Fourteenth, and Eighth Amendment Claims

Plaintiff's complaint generically asserts First, Fourth, Fourteenth, and Eighth Amendment claims without specifying the theories or factual underpinning of each claim.  Compl. ¶ 2.1 (Dkt. 5).  Defendants charitably construe this paragraph of Plaintiff's complaint along with the discovery materials to assert a variety of potential claims, including (i) a Fourth Amendment excessive force claim, (ii) a First or Fourteenth Amendment retaliation claim, (iii) a Fourteenth

Amendment defamation claim, (iv) a Fourteenth Amendment procedural due process claim, and (v) an Eighth Amendment post-conviction claim.  Defendants have moved to dismiss all five claims.  Notably, Plaintiff has not responded to these arguments or defended these claims in any way.

In the face of this silence, the Court turns first to the complaint to see what claims Plaintiff has alleged.  *See Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (even when applying the liberal interpretation of a complaint afforded to pro se plaintiffs, the Court "may not supply essential elements of the claim that were not initially pled.").

Here, Plaintiff has not alleged *any* facts or legal theories to support a Fourth Amendment excessive force claim, a First or Fourteenth Amendment unlawful retaliation claim, or an Eighth Amendment cruel and unusual punishment claim.  *See generally* Compl. (Dkt. 5).  The Court will consequently treat these claims as waived.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."); *see also Ederi v. United States Citizenship & Immigration Servs.*, 817 F. App'x 329, 331 (9th Cir. 2020) (unpublished) (where the "appellants did not assert a procedural due process claim in their complaint, and failed to raise the issue in either their own summary judgment motion or in response to the government's summary judgment motion," the claim was waived).

The remaining two claims have some tenuous bases in the complaint.  *See* Compl. ¶ 3.4, 3.6-3.7, 3.12, 3.14 (Dkt. 5).  Out of an abundance of caution, the Court will treat these claims as if they had been asserted.  In these circumstances, the Court's ability to summarily dismiss the claims in response to Defendants' uncontested motion for summary judgment is more limited. *Cristobal v. Siegel*, 26 F.3d 1488, 1491 (9th Cir. 1994) (where a nonmoving party fails to respond to a motion for summary judgment, this alone does not provide authority to grant the

motion; the court must independently evaluate the sufficiency of the motion); *see also* District of

Idaho Local Rule 7.1(e)(2) ("In motions brought under Federal Rule of Civil Procedure 56, if the

non-moving party fails to timely file any response documents required to be filed, such failure

will not be deemed a consent to the granting of said motion by the Court."). As required by

these authorities, the Court has independently considered the validity of Plaintiff's putative

Fourteenth Amendment defamation and procedural due process claims. The Court agrees that

Defendants are entitled to judgment as a matter of law on these claims.

First, although there are circumstances where individuals can bring a due process liberty

claim based on defamatory statements, such claims require more than "false or damaging

accusations alone." *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992) (citing *Paul v.

Davis*, 424 U.S. 693, 708-09 (1976)). To give rise to a due process liberty claim, governmental

criticism "must be accompanied by the loss or alteration of a right or status recognized by state

law," such as the termination of an individual's employment. *Id.* Plaintiff has not presented any

evidence showing that the defamatory statements in this case – statements by certain Deputies

that Plaintiff stole property from multiple community members, including elderly women – were

accompanied by such a loss. The Court will, therefore, dismiss Plaintiff's due process

defamation claim with prejudice.

Second, a § 1983 procedural due process claim has three elements; "the plaintiff must

establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a

deprivation of the interest by the government; [and] (3) lack of process." *Shanks v. Dressel*, 540

F.3d 1082, 1090 (9th Cir. 2008). Here, Plaintiff has presented evidence that he was temporarily

deprived of a property interest in his firearm. Plaintiff, however, has not alleged or produced any

facts to show that this deprivation was accompanied by an unconstitutional lack of process.

While due process of law generally requires notice and an opportunity for hearing prior to the

**MEMORANDUM DECISION AND ORDER - 29**

deprivation of a significant property interest, neither the negligent nor intentional deprivation of property states a due process claim under § 1983 if, as here, (i) the deprivation was random and unauthorized and (ii) the state provides an adequate state post-deprivation remedy for the deprivation. *Raditch v. United States*, 929 F.2d 478, 480-481 (9th Cir. 1991) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984)). In this case, Plaintiff acknowledges that he was able to secure the return of his firearm the same day he was released from jail. Renfro Depo. at 38:9-38:10, 76:8-77:10 (Dkt. 48-7). Further, Idaho law provides a specific remedy for those seeking the return of property that was seized as potential evidence of a crime. *See* Idaho Criminal Rule 41(f) (providing that any "person aggrieved by an unlawful search and seizure of property may move for the property's return."). Plaintiff has made no showing that these procedures were constitutionally inadequate to address the allegedly unlawful seizure of his firearm. The Court will, consequently, dismiss Plaintiff's putative procedural due process claim with prejudice.

F.  Individual and Municipal Liability

i. *Claims Against the Individual Defendants*

Having determined that some of Plaintiff's § 1983 claims may proceed to trial and some may not, the Court is confronted with the question of which individual Defendants face liability on the surviving claims. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation."). At the March 25, 2022 motion hearing, Plaintiff's counsel indicated that Plaintiff believes the following Defendants are personally liable for his unlawful detention: Sheriff Resser, Deputy Dickenson, Sr., and Deputy Wynn. Plaintiff further indicated that the Defendants responsible for the allegedly unlawful seizure of his firearm are: Sheriff Resser, Deputy Dickenson, Sr., Deputy Wynn, and Deputy

**MEMORANDUM DECISION AND ORDER - 30**

Vannatter.[17]  The Court will permit Plaintiff's claims to proceed only against these individuals.[18]

Deputy Pulley, accordingly, will be dismissed as a defendant from this lawsuit.

        ii.  *Claims Against the County of Benewah*

In his complaint, Plaintiff argues that the County of Benewah is liable for every alleged

violation of his constitutional rights.  Plaintiff, however, presents absolutely no argument in the

briefing to defend this position.  This puts Plaintiff at a serious disadvantage.

Section 1983 does not permit vicarious liability against governmental agencies.  To

impose liability on a municipality under § 1983, often called *Monell* liability after *Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that he was deprived of a

constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate

indifference to his constitutional right; and (4) the policy was the moving force behind the

constitutional violation.  *Gordon v. Cty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021).  Proof of an

unlawful policy may take several forms, including evidence of a "longstanding practice or

custom."  *Id.*  As the Ninth Circuit has explained:

---

[17] At the March 25, 2022 hearing, Defense counsel argued that Plaintiff had not alleged or
preserved an individual capacity claim against Deputy Vannatter.  Defendant Vannatter waived
this argument by failing to raise it in the briefing.  *Arpin v. Santa Clara Valley Transp. Agency*,
261 F.3d 912, 919 (9th Cir. 2001) (issues which are not specifically and distinctly argued and
raised in a party's opening brief are waived).  Even if he had not, the argument is unpersuasive.
While the caption of Plaintiff's complaint is confusingly worded, the body of the complaint
clearly indicates that Plaintiff is suing all the named Defendants in both their individual and
official capacities.  Compl. ¶¶ 4.17-5.22 (separately alleging § 1983 claims against all named
Defendants under one heading before asserting a *Monell* claim under a different heading).
Defendant Vannatter cannot reasonably claim that he lacked notice of this individual capacity
claim, as he asserted qualified immunity – a defense only available to individual Defendants – in
Defendants' motion for summary judgment.  *See* Def.'s MSJ at 12 n.2 (Dkt. 45-1).

[18] It remains to be seen whether Plaintiff can establish personal participation of each of these
individuals in the violation of his constitutional rights.  *See, e.g., Hyde v. City of Willcox*, 23
F.4th 863, 874 (9th Cir. 2022) (a respondeat superior theory is insufficient to hold a supervisor
liable under § 1983 for the acts of their subordinates).  Defendants have not requested summary
judgment on these grounds, however, and the Court will not raise this argument on their behalf.

**MEMORANDUM DECISION AND ORDER - 31**

> An unconstitutional policy need not be formal or written to create municipal liability under Section 1983; however, it must be so permanent and well settled as to constitute a custom or usage with the force of law.  Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.

*Id.* at 974 (internal citations omitted).

At the March 25, 2022 motion hearing, Plaintiff indicated that his *Monell* claim was based on a theory that the County of Benewah's failure to train its officers gave rise to a practice or custom of violating citizens' constitutional rights.  The Supreme Court has held that a "municipality's culpability for a deprivation of rights is at its most tenuous" in these circumstances.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To prevail on such a claim, a plaintiff must show both deliberate indifference to the need to train subordinates and the lack of training caused the constitutional harm or deprivation of rights.  *Flores v. County of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014).  Critically, mere negligence does not suffice to show deliberate indifference.  *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).  The plaintiff must allege facts to show that the municipality "disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights."  *Flores*, 758 F.3d at 1159; *see also Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793-794 (9th Cir. 2016) (a plaintiff can proceed on a failure to train claim where the plaintiff shows that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need").  In all but a narrow range of cases, this requires showing a "pattern of similar constitutional violations by untrained employees."  *Flores*, 758 F.3d at 1159.

Plaintiff does not engage with these standards or identify *specific* evidence to support his burden of proof.  The only vindication Plaintiff offers for his *Monell* claim is (i) contained in Plaintiff's statement of disputed facts and (ii) is comprised of several broad citations to the deposition and civil complaint of Deputy Dickenson, Sr.  This is not a sufficient basis to support a *Monell* claim.

"Our adversarial system relies on the advocates to inform the discussion" by raising issues to the court and providing contentions "accompanied by reasons."  *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).  Here, Plaintiff has failed to present a coherent theory of *Monell* liability.  While Deputy Dickenson, Sr.'s deposition contains information about several incidents where Deputy Dickenson, Sr. felt officers were not adequately disciplined for failing to follow various policies, Plaintiff has not shown that these incidents were part of a pattern that the County should have known would give rise to a practice of *constitutional* violations.  Nor has Plaintiff established that these disciplinary disputes are related to the violations in this case.[19]  *See generally* Dickenson Depo. (Dkt. 48-5).  In short, Plaintiff does not connect the evidence to the law and explain (i) why the County's training of its officers amounted to "deliberate indifference," rather than mere negligence, and (ii) how the

---

[19] Deputy Dickenson, Sr., for example, testified that Deputy Pulley lied in a police report.  To support this assertion, Deputy Dickenson explained that Deputy Pulley's report stated that Deputy Pulley went right to the suspect's apartment, when Deputy Pulley actually knocked on a neighboring apartment first and was told the suspect he was looking for lived down the hall.  Dickenson Dep. at 14:11-16, 66:17-67:3 (Dkt. 48-5).  In a similar vein, Deputy Dickenson discussed a police report where Deputy Wynn wrote that he stopped a car for crossing the center line and fog line, but the video only showed the car crossing the center line.  *Id.* at 35:16-37:7.  Plaintiff has not articulated why these sporadic omissions and misstatements should have put the County on notice that officers required further training to prevent ongoing *constitutional* violations or how the County's failure to respond to these issues more aggressively caused the violations of Plaintiff's rights.

**MEMORANDUM DECISION AND ORDER - 33**

alleged lack of training was connected to the violations in this case.  In the absence of such a showing, the Court must dismiss Plaintiff's *Monell* claims.

## II.      Plaintiff's State Law Claims

Plaintiff's complaint contains four state law claims: (1) malicious prosecution, (2) non-delegable duty of care, (3) recklessness and gross negligence, and (4) negligent and intentional infliction of emotional distress.  Compl. at 9-12 (Dkt. 5).

In their motion for summary judgment, Defendants moved to dismiss all four state claims under the Idaho Tort Claims Act.  As Defendants emphasize, this Act immunizes the government and governmental employees from liability for assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process as long as the alleged tort-feasor was acting "without malice or criminal intent."  I.C. § 6-904(3); *see also James v. City of Boise*, 160 Idaho 466, 482 (Idaho 2016).  Plaintiff fails to address why this statute would not apply to, and bar, his state claims.  Plaintiff's silence is revealing.  Plaintiff's state law claims, while advanced under a variety of names, all sound in malicious prosecution, false imprisonment, false arrest, or abuse of process.  Compl. ¶¶ 3.9, 3.13, 6.17-9.23 (alleging that Defendants violated his state rights by arresting, incarcerating, and prosecuting him on a "false felony charge of felon in possession").  These claims, consequently, are governed by I.C. § 6-904.  *Greenfield v. City of Post Falls Municipality*, No. 2:13-cv-00437-CWD, 2014 WL 1343478, *13 (D. Idaho April 3, 2014) ("Immunity granted under I.C. § 6-904(3) is not annulled because [a plaintiff] change[s] the wording for . . .theories upon which [his] claims are based.").

For these claims to proceed, Plaintiff must produce evidence from which a court could reasonably infer that Defendants added the felon-in-possession charge against him with malice or criminal intent.  *See Bliss v. Minidoka Irrigation Dist.*, 167 Idaho 141, 155-156 (Idaho 2020).  In this context, malice means "the intentional commission of a wrongful or unlawful act, without

legal justification or excuse and with ill will, whether or not injury was intended." *Id.*  Criminal intent, which is closely related, means "the intentional commission of what the person knows to be a crime." *Id.* at 156; see also *James*, 160 Idaho at 484.

Plaintiff has not produced *any* evidence that Deputy Wynn acted with this level of disregard for Plaintiff's rights.  Specifically, Plaintiff has not identified evidence that Deputy Wynn did not make an honest mistake, but instead knew the felon-in-possession charge was unfounded when he added it.[20]  In the absence of such a showing, the Court must dismiss Plaintiff's state law claims.  *Miller v. Idaho State Patrol*, 150 Idaho 856, 870 (Idaho 2011).

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment (Dkt. 45) is GRANTED in part as follows:

    a. Plaintiff's Fourth Amendment unlawful search claim is dismissed with prejudice.

    b. Plaintiff's claim that his misdemeanor arrest violated the Fourth Amendment is dismissed with prejudice.

    c. Plaintiff's Fourteenth Amendment defamation and procedural due process claims are dismissed with prejudice.

---

[20] In his statement of disputed facts, Plaintiff asserts that "Deputy Wynn knew [Plaintiff] had been a reserve officer and had cleared a background check as a reserve officer."  Pl.'s Stmnt of Facts at 2-3 (Dkt. 50-4).  If true, this arguably suggests that Deputy Wynn knew Plaintiff was not a felon.  Plaintiff, however, has not cited to any factual support for this assertion and the Court could not find any.

**MEMORANDUM DECISION AND ORDER - 35**

    d.   The Court finds that Plaintiff has not asserted, and has therefore waived, any Fourth Amendment excessive force, First or Fourteenth Amendment unlawful retaliation, or Eighth Amendment claims.

    e.   Plaintiff's state law claims are dismissed with prejudice.

    f.   Plaintiff's municipal liability claim and all other claims against the County of Benewah, including all official capacity claims, are dismissed with prejudice.

    g.   As a result of the above rulings, Defendants County of Benewah and Dustin O. Pulley are terminated as Defendants in this lawsuit.

2.   Defendants' Motion for Summary Judgment (Dkt. 45) is DENIED in part as follows:

    a.   The Motion is denied as to Plaintiff's Fourth and Fourteenth Amendment unlawful detention claim as asserted against individual Defendants Sheriff Dave Resser, Deputy Bryan Dickenson Senior, and Deputy Colton Wynn.

    b.   The Motion is also denied as to Plaintiff's Fourth Amendment unlawful firearm seizure claim as asserted against individual Defendants Sheriff Dave Resser, Deputy Bryan Dickenson Senior, Deputy Brandon Vannatter, and Deputy Colton Wynn.

DATED: May 16, 2022

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 36**